1  Anna M. Rossi, Cal. State Bar No. 106229
   Duncan MacDonald, Cal. State Bar No. 148684
2  ROSSI & MACDONALD APC
   A PROFESSIONAL CORPORATION
3  369 Pine Street, Suite 400
   San Francisco, CA 94104
4  Telephone: (415) 956-7777
   Facsimile: (844) 287-8360
5
6  Attorneys for Plaintiff Marc Marchioli

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10
   MARC MARCHIOLI,                          Case No.
11
                    Plaintiff,              COMPLAINT FOR:
12                                          1.  VIOLATION OF THE FEDERAL FAIR
          v.                                    CREDIT REPORTING ACT;
13                                          2.  BREACH OF CONTRACT;
   PRE-EMPLOY.COM, INC, EISENHOWER          3.  PROMISSORY ESTOPPEL;
14 MEDICAL CENTER, and DOES 1               4.  BREACH OF THE COVENANT OF GOOD
   THROUGH 10,                                  FAITH AND FAIR DEALING;
15                                          5.  INTENTIONAL INTERFERENCE WITH
                    Defendants.                 CONTRACTUAL RELATIONS;
16                                          6.  INTENTIONAL INFLICTION OF
                                                EMOTIONAL DISTRESS;
17                                          7.  INTENTIONAL INTERFERENCE WITH
                                                PROSPECTIVE ECONIMIC RELATIONS;
18                                          8.  NEGLIGENT INTERFERENCE WITH
                                                PROSPECTIVE ECONOMIC RELATIONS
19                                          9.  VIOLATION OF LABOR CODE § 1198.5,
                                                INCLUDING INJUNCTIVE RELIEF;
20

21

22

23       Plaintiff Marc Marchioli, an individual, alleges:

24                      **JURISDICTION AND VENUE**

25       1.      Jurisdiction is conferred on this Court by 28 U.S.C. §1332(a).  Supplemental

26 jurisdiction over Plaintiff's claims under Federal law is conferred by 28 USC §1331.  Venue is

27 proper in the Eastern District of California because Defendant Pre-Employ.com, Inc. resides in this

28 District, and because a substantial part of the events, acts and omission giving rise to Plaintiff's

                                           1
                    COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

claims occurred in this District.

## INTRODUCTION

2.     This is an action for damages and equitable relief arising out of Plaintiff's acceptance of employment with Defendant Eisenhower Medical Center ("EMC"), and EMC's termination of that employment prior to Plaintiff's first day of work.   It further arises from all Defendants failure to follow the requirements of the Fair Credit Reporting Act (15 U.S.C. §1681, et seq.), the California Consumer Credit Reporting Agencies Act (Cal. Civ. Code, §1785.1 et seq.), and the California Investigative Consumer Reporting Agencies Act. (Cal Civ. Code, §1786 et seq.), and to provide Plaintiff with all of his protections under those Acts.  Further, Defendant EMC violated California Labor Code, section 1198.5 by failing to provide Plaintiff access to his personnel files and records. Plaintiff seeks damages and equitable relief to remedy these egregious violations of his rights.

## PARTIES

3.      Plaintiff, Marc Marchioli ("Marchioli"), is a resident of Pittsburg, Pennsylvania.  At all times relevant to this litigation, Plaintiff was an employee, or should have remained an employee, of employer Defendant EMC, and was a "Consumer" under the Federal and State Fair Credit Consumer/ Investigative Reporting Acts, subject to the protections provided by those Acts.

4.      Defendant Pre-Employ.com, Inc., ("Pre-Employ") is a corporation incorporated in California, with its principal place of business in Anderson, California, which is within the judicial district of this Court.  At all times relevant to this litigation, Pre-Employ was subject to the Federal and State Fair Credit Consumer/Investigative Reporting Act laws as a Consumer Reporting Agency.

5.      Defendant Eisenhower Medical Center is a not-for-profit corporation incorporated in California, with its principal place of business in Rancho Mirage, California.  At all times relevant to this litigation, EMC was an employer, or should have been an employer, of Plaintiff Marchioli in the State of California and was also subject to the Federal and State Fair Credit Consumer/Investigative Reporting Acts as a user of Consumer Reports.

6.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1- 10 inclusive, and therefore sues these Defendants by such fictitious names and capacities. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

Plaintiff is informed and believes and on that basis alleges that each fictitiously named Defendant is responsible in some manner for the occurrences, acts and omissions herein alleged, and that Plaintiff's injuries were proximately caused by the conduct of such Defendants.

7.     All of the Defendants, including the Doe Defendants, are alleged to be joint employers and/or co-conspirators with each other, in that each agreed to participate and participated in the furtherance of the objective of a civil wrong as alleged in this Complaint.

8.     Plaintiff is informed and believes and thereupon alleges that each Defendant entered into a conspiracy and agreement with the other Defendants and/or subsequently joined said conspiracy and ratified the prior acts and conduct of the Defendants who had previously entered into said conspiracy and, upon information and belief, alleges that all Defendants have knowingly, maliciously and willfully entered into said conspiracy, which continues until this day.  The purposes of this ongoing conspiracy include, but are not limited to, the wrongs alleged herein.  All Defendants' acts and failure to act as alleged herein were perpetrated in furtherance of the ongoing conspiracy.

9.     Plaintiff is informed and believes and thereupon alleges that at all times material herein, each Defendant was dominated and/or controlled by his, her or its co-Defendants, each was the agent, representative, and alter ego of the others, and all aided and abetted the wrongful acts of the others.

10.     Whenever and wherever this Complaint refers to any act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and/or severally, unless noted otherwise.

11.     Plaintiff is informed and believes and thereupon alleges that at all times material herein, each of the Defendants was the agent, employee and/or joint venturer of, or working in concert with, its, his, or her co-Defendants, and was acting within the course and scope of such agency, employment, and/or joint venture or concerted activity.  To the extent that said acts, conduct and omissions were perpetrated by certain Defendants, Plaintiff is informed and believes and thereupon alleges that the remaining Defendant and/or Defendants confirmed and ratified said acts, conduct and omissions, unless noted otherwise.

12.     Whenever and wherever reference is made to individuals who are not named as

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiffs or Defendants in this Complaint but are or were employees/agents of Defendants, or any of them, such references shall be deemed to mean that such individuals at all relevant times acted on behalf of Defendants within the scope of their employment and/or agency.

**FACTUAL ALEGATIONS**

13.     In September, 2014, Plaintiff submitted an on-line application to EMC for a position of a Physician's Assistant.

14.     Throughout September and October, 2014, Plaintiff had telephone interviews with EMC staff, including with the physicians with whom Plaintiff would be working and the VP of Eisenhower Medical Associates, EMC's Physician group.

15.     In October 2014, Plaintiff was invited to travel from Pennsylvania to California for in-person interviews because EMC was "so excited to have such a promising qualified candidate come for an in-person interview."

16.     As part of these travel plans, EMC was willing to pay a portion of Plaintiff's travel expenses, but not all of them.  EMC told Plaintiff to "[P]lease know that we appreciate the time and expense that you are contributing" to this trip.

17.     Plaintiff's trip to interview in person with EMC in California took place from November 3 through November 10, 2014.

18.     As part of Plaintiff's interview process at EMC in November 2014, Plaintiff attended a lunch with EMC's Rimrock Group providers (doctors and staff), received a tour of EMC's Rimrock Hospital campus, and attended an EMC provider dinner where he met a broad group of EMC primary care providers and their partners.

19.     Additionally, during the interview process in November 2014, EMC invited Plaintiff to join other employees in marching at a November 9, 2014 Gay Pride Parade in Palm Springs.  At the event, Plaintiff was given an EMC T-shirt to wear and marched along other EMC employees as a public representative of EMC.

20.     After Plaintiff concluded his interviews at EMC, EMC notified him that it wanted to "talk further" to him.

21.     On November 26, 2014, EMC extended an offer of employment to Plaintiff to work at

EMC's Rimrock facility as a Physician Assistant.  The email which included the offer of

employment stated, "Here is your Offer Letter. We are excited to have you join the team!"

22.     EMC's Offer of Employment specified that Plaintiff would be a Physician Assistant at

EMC's Primary Care Palm Springs Rimrock facility, and would report to Dr. Stansell, who was a

member of Carl Enzor (Chief Administrative Officer) team.  The position was stated to be a full

time, exempt position with compensation of $125,195.20, plus a comprehensive benefit package.

Plaintiff was to start working at the Rimrock facility on March 2, 2015.  The offer was contingent

upon a successful completion of fitness for duty exam, background check, orientation, and further

evaluation and confirmation of Plaintiff's qualifications.  Plaintiff was also to receive a $10,000

relocation package.  If Plaintiff accepted this Offer of Employment, then Plaintiff would receive an

"Eisenhower New Hire instructions" packet and a telephone call from an EMC HR Generalist, Erika

Gonzalez, who would help him with the on-boarding process, and assist him with his appointment

for his fitness for duty exam and the orientation.

23.     EMC also sent, with its Offer of Employment, a packet of materials regarding the

"Onboarding Process" that provided Employee Health Forms for Plaintiff to complete, instructions

for coordinating the pre-employment physical, and stated additional "new hire documents" would be

forthcoming from EMC's Human Resources department "in a few days."  The onboarding

documents given to Plaintiff made it clear that he had been offered a job and was deemed by EMC

to be an employee.  The Eisenhower Medical Center Medical History Questionnaire stated, "You

have been made an offer of employment, conditioned on the satisfactory completion of this

questionnaire and on the results of your pre-employment drug screen, labs and physical assessment."

The onboarding Registration Form for the drug test noted it was a "Post-Offer Employment Exam."

The onboarding Respirator Fit Test Record, Tuberculosis Surveillance form, and Worker's

Compensation: Pre-Designation of Personal Physician form all asked Plaintiff to identify himself as

an employee and sign the forms with his "Employee Signature."  The OSHA Respirator Medical

Evaluation Questionnaire stated "Per the Occupational Health and Safety Administration (OSHA)

EMC must allow you to answer this questionnaire during normal working hours, or at a time and

place that is convenient for you" and "To maintain your confidentiality, per OSHA, your director or

supervisor must not look at or review your answers …." (Emphasis added.)  The onboarding

documents also included a drug testing form that stated:

> As a condition of employment Drug and Alcohol Testing are conducted as part of Eisenhower
>
> Medical Center's hiring process.  …
>
> This testing is normally completed prior to employment.
>
> Due to scheduling issues at present, it is mutually agreed between Eisenhower Medical Center
>
> and the new employee that he/she cannot start working until results of the drug testing are
>
> completed and/or confirmed.  The employment relationship with Eisenhower Medical Center
>
> will be immediately **severed** should he/she not pass the drug test.  (Emphasis added.)

24.    Plaintiff accepted the EMC's offer of employment immediately, and sent the formal

signed letter contract to EMC on December 8, 2014.  Plaintiff received EMC's countersigned copy

of the offer on December 9, 2014.

25.    EMC's Offer of Employment and Plaintiff's acceptance of that Offer created a

contract of employment between EMC and Plaintiff.  A true and correct copy of Plaintiff's

employment Contract with EMC is attached hereto as Exhibit 1.

26.    Upon Plaintiff's acceptance of employment at EMC, EMC began working with

Plaintiff to begin the on-boarding process and to set up his fitness for duty exam.

27.    On November 26, 2014, Plaintiff also received the EMC New Hire Personnel Action

Form which showed that Plaintiff had been hired as a Physician Assistant to start work at Primary

Care Palm Springs Rimrock beginning March 2, 2015.

28.    On November 26, 2014, Plaintiff also received EMC's New Hire packet of

information.  While this packet only included EMC's Relocation Policy, the remaining portion of

the New Hire Packet was sent to Plaintiff on December 9, 2014.   .

29.    On November 29, 2014, Plaintiff inquired about the real estate relocation person

which EMC had suggested that he use when relocating to Palm Springs so that he could start making

his moving plans.

30.    On December 1, 2014, EMC requested Plaintiff to fill out an EMC form so that EMC

could send Plaintiff EMC's Hospital Credentialing packet to Plaintiff.  Plaintiff had been credentialed to work as a Physician Assistant in numerous other hospitals and facilities.  EMC also sent Plaintiff the contact information for the real estate relocation contact the EMC recommended.

31.    On December 9, 2014, EMC instructed Plaintiff to make arrangements to once again visit EMC, this time to get the required physical performed.

32.    On December 15, 2014, EMC emailed Plaintiff his credentialing packet documents. This packet included fifteen attachments, including: Instructions; Application Rev; Malpractice Questions; Appeal Process; Statement of Sup Phys; Sup Phys List; CME Form; Application MS 1a Required Interviews; Code of Conduct; Cover sheet for practice prerogatives; Info to help expedite app; Accreditation Certification Requirements Edu Pkt 2014; Retrains and Seclusion Policy; PA Practice prerog Rev; and Misc. Forms.  EMC stated that the credentialing process usually took six to eight weeks. (Ex.1.)

33.    On December 20, 2014, Plaintiff notified EMC that he had applied to refinance his student loans so that he would have additional money to make the move to Palm Springs.  In order to qualify for this loan, EMC needed to confirm Plaintiff's employment with EMC.

34.    On December 22, 2014, after receiving confirmation that Plaintiff was indeed employed with EMC, Plaintiff's loan was approved.

35.    On December 29, 2014, Plaintiff sent EMC the completed credentialing packet. Plaintiff understood that under the law, EMC would process Plaintiff's credentialing application in good faith and in accordance with the State of California and Federal laws.

36.    On January 12, 2015, NCCPA confirmed to EMC Plaintiff's then current certification status.

37.    On February 27, 2015, Plaintiff's direct supervisor, Carl Enzor, inquired of EMC as to whether Plaintiff had been credentialed yet, inasmuch as he was to begin working on the following Monday, March, 2, 2015.

38.    Also on February 27, 2015, Mr. Wray, the Nurse Recruiter for EMC, inquired of EMC credentialing department about the status of Plaintiff's on-boarding process.  Because the process was not completed, Plaintiff's start date was postponed until March 23, 2015.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

39.     On March 20, 2015, Plaintiff received an email from EMC Human Resources stating, "Congratulation on your new position and welcome to the Eisenhower Medical Center."  EMC also stated that the first step on the on-boarding process was to begin the background check.  The process, according to EMC, was to complete the background check and then to schedule the health assessment and the HR orientation.  EMC also informed Plaintiff, that "New Hires who are relocating to our area should plan to arrive no later than the Tuesday before you start date." EMC then directed Plaintiff to fill out new hire documents and directed Plaintiff to a particular web site providing him with a user name and password.

40.     On March 20, 2015, Plaintiff was also informed that his file would be process through the Inter Discipline Practice Committee ("IDPC") on March 26, 2015.

41.     Based upon information and belief, EMC had contracted with Pre-Employ, a Consumer/Investigative Reporting Agency, prior to March 20, 2015 to prepare a Consumer/Investigative Report on Plaintiff.

42.     On or about March 20, 2015, Plaintiff was also contacted by Pre-Employ as part of EMC's on-boarding process, and asked for additional information about his work history.

43.     Pre-Employ is, a Consumer/Investigative Reporting Agency in that, for a fee, it engaged in the practice of assembling, disseminating and/or evaluating consumer information about Plaintiff for the purpose of furnishing consumer and investigative reports to third parties, including EMC, for employment purposes, i.e. for the purpose of evaluating a consumer for employment qualifications and retention.

44.     As part of Plaintiff allowing Pre-Employ to prepare a Consumer/Investigative Report on Plaintiff, Plaintiff and Pre-Employ entered into a contract, and there was an implied-in-fact contract formed, that Pre-Employ would abide by all Federal and State of California laws that protected Plaintiff in regards to Consumer/Investigative reporting.  There was also an implied-in-fact promise that Pre-Employ would act in good faith and perform its tasks in a manner that met industry standards.

45.     Plaintiff responded to Pre-Employ's request for additional information immediately and informed Pre-Employ, as he had done with EMC, that it was acceptable for them to contact his

prior employers.

46.     On March 21, 2015, Pre-Employ requested specific information on one of Plaintiff's prior employers, and Plaintiff immediately responded with the request information, and specifically responded to the questions "May We Contact?", with a **Yes**."

47.     On March 25, 2015, Plaintiff filled out and submitted a Request for Verification which provided Pre-Employ with an authorization to "request all persons, schools, businesses, corporations, credit bureaus, courts, law enforcement armed forces, employment commissions, and all government agencies' to release" the requested information to Pre-Employ without restrictions or qualifications.

48.     Between December 29, 2014 and March 27, 2015, EMC and Pre-Employ worked on collecting Plaintiff's background, employment, and public information required for the credentialing process.  Plaintiff was cooperative and took all reasonable steps to assist EMC and Pre-Employ in the collection of this information.

49.     On March 27, 2015, Pre-Employ closed its file on Plaintiff and on information and belief submitted its Consumer/Investigative Report on Plaintiff to EMC.

50.     On March 27, 2015, Plaintiff also received a telephone call from Robert Circle of EMC's Human Resources telling Plaintiff that EMC was not going to pursue [Plaintiff's] application at this time because there had been "a problem with the application process."

51.     On April 17, 2015, Plaintiff wrote to EMC asking for information as to why his employment process was terminated after he had received and accepted employment with EMC. Plaintiff asked for an explanation and suggested that EMC might be relying on mistaken information.

52.     EMC never responded to Plaintiff's request.

53.     Receiving no response to his April 17th letter, Plaintiff sent two more request for information to EMC about the decision to terminate Plaintiff's employment.

54.     Finally, on May 29, 2105, EMC responded stating only, "During the pre-hire process, the decision was made to discontinue the hiring process with you," and notifying Plaintiff that Pre-Employe.com was the Consumer Reporting Agency that it used for background checks, if one had

been done.

55.     On or about June 25, 2015 Plaintiff received a copy of Pre-Employ's Consumer/Investigative Report which stated that Plaintiff had forbidden Pre-Employ to speak to any of his prior employers.

56.     On July 3, 2015, Plaintiff again requested a copy of his entire personnel, credentialing and associated files, and was eventually told by EMC that he would not receive any personal or credentialing files or records that were in EMC's possession.

### FIRST CLAIM OF RELIEF FOR VIOLATION OF THE FEDERAL CREDIT REPORTING ACT (15 U.S.C. §681, et seq.)
### [AGAINST EMC, PRE-EMPLOY AND DOES 1 THROUGH 5]

57.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 above.

58.     During the relevant time periods, EMC had a policy and practice of obtaining a Consumer/Investigative Report on an individual only after that individual was an employee who was deemed qualified, selected to hire, and hired.

59.     Both Defendants EMC (as a user of a Consumer/Investigative Reports) and Pre-Employ (as a Consumer/Investigative Reporting Agency) violated the FCRA by: (1)  failing to provide Plaintiff with notice of the employer's intention to take an adverse employment action based in whole or in part on information contained in the applicant's Consumer/Investigative Report; and (2) failing to adopt and follow reasonable procedures, in regards to the Consumer/Investigative Report preparation and the gathering of personal information related to employment.

60.     The information contained in Pre-Employ's Consumer/Investigative Reports contained inaccurate information about Plaintiff; the information was inaccurate because Pre-Employ did not follow reasonable procedures to assure maximum possible accuracy;

61.     Defendants acted both negligently and willfully in violating the FCRA statutory requirements.

62.     Defendants, as experienced users and compliers/disseminators/evaluators of consumer information acted both knowingly and/or in reckless disregard of their statutory duties under the FCRA.

63.   Defendants conduct in not performing their required statutory duties under the FCRA was objectively unreasonable in light of the fact that the FCRA legal rules that Defendants violated were clearly established at the time of their actions.

64.   Defendants, their officers and managing agents knew, or should have known, that they and their agents, officers and employees, acting within the scope of their employment, were taking intentional wrongful actions toward Plaintiff.

65.   Defendants committed the acts alleged herein maliciously, fraudulently and/or oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and/or in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages in amounts to be proven at trial.

66.   As a direct, foreseeable and proximate result of the Defendants' violation of the FCRA requirements, Plaintiff has been injured and has suffered damages including lost wages and employment benefits, extreme emotional distress, punitive damages, and other consequential damages to which he is entitled.  The exact amount of plaintiff's damages is unknown, and will be determined at trial.

<u>SECOND CLAIM FOR RELIEF FOR BREACH OF CONTRACT</u>
**[AGAINST EMC, PRE-EMPLOY AND DOES 6-8]**

67.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

68.   Defendants EMC and Pre-Employ breached their contracts with Plaintiff.

69.   On November 26, 2014, Defendant EMC entered into a contract of employment with Plaintiff stating that starting March 2, 2015, Plaintiff would begin working for Defendant EMC as a Physician Assistant at the Primary Care Palm Springs Rimrock facility, and that he would be paid a yearly salary of $125,195.20. Ex. 1.  In this contract, EMC also stated that Plaintiff would receive a comprehensive benefit package, including $10,000 relocation assistance, and assigned Plaintiff a direct supervisor, EMC Chief Administrative Officer, Mr. Carl Enzor.

70.   As part of this contract, EMC promised to provide Plaintiff with employment and Plaintiff promised to perform work for EMC in the manner and at the level of proficiency required

1   by EMC.

2       71.     The EMC employment contract had four conditions precedents that needed to be

3   accomplished before Plaintiff could start working as an employee of EMC: (1) the successful

4   completion of a fitness for duty medical exam; (2) a background check; (3) the successful

5   completion of EMC's orientation; and (4) the further evaluation and confirmation of Plaintiff's

6   qualifications by his Director.

7       72.     As part of EMC's employment contract with Plaintiff, Plaintiff had to undergo a

8   background check.

9       73.     In early March, after Plaintiff was an employee with EMC, and after Plaintiff had

10  submitted all of the information that EMC requested, EMC hired Pre-Employ as a Consumer

11  Reporting Agency to perform a background check on Plaintiff.

12      74.     EMC had a practice and pattern of only requesting background checks on individuals

13  who were already employed with EMC.

14      75.     Pre-Employ is, a Consumer/Investigative Reporting Agency in that, for a fee, it

15  engaged in the practice of assembling, disseminating and/or evaluating consumer information about

16  Plaintiff for the purpose of furnishing consumer and investigative reports to third parties, including

17  EMC, for employment purposes, i.e. for the purpose of evaluating a consumer for employment

18  qualifications and retention.

19      76.     As part of Pre-Employ's performance as a Consumer Reporting Agency, it promised,

20  and there was also an implied promise, to Plaintiff that Pre-Employ would treat Plaintiff fairly in

21  assembling, disseminating and/or evaluating his qualifications for EMC's employment, and it would

22  abide by all of the Federal and State of California laws that governed Consumer Reporting

23  Agencies. Ex. 2.

24      77.     Plaintiff filled out and provided all of the information that Pre-Employ requested and

25  gave Pre-Employ permission to contact all of Plaintiff's prior employers and references.

26      78.     As part of this process, there was a contract and an implied contract between Pre-

27  Employ, EMC and Plaintiff that Pre-Employ and EMC would process Plaintiff's background check

28  in good faith.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

79.    By March 20, 2015, Plaintiff had been an employee of EMC for approximately three months and had fulfilled all of the employment contract requirements that were within his power to fulfill.

80.    On February 27, 2015, EMC moved Plaintiff's date to start working to March 28, 2015.

81.    On March 20, 2015, Plaintiff received an email from EMC congratulating him on his new positon and welcoming him to EMC.  It also stated that the "first step in the onboarding process is to begin processing your background check."  This email also told Plaintiff that as soon as the processing of the background check was completed, his fitness for duty medical exam and his orientation would be scheduled.  This email also included "on-line" hire documents for Plaintiff to fill out as part of the onboarding process.

82.    On information and belief, between early March and March 27, 2015, Pre-Employ collected, assembled, evaluated, and disseminated information it gathered on Plaintiff in Pre-Employ's Consumer/Investigative Report.

83.    By March 27, 2015, EMC and Pre-Employ had received all of Plaintiff's references and background information that EMC/Pre-Employ had requested as part of EMC's onboarding process.

84.    On March 27, 2015, Plaintiff was informed that he could not start working for EMC on March 28, 2015 because there had been a "problem with the application process."

85.    On March 27, 2015, Plaintiff's employment with Defendant EMC was terminated prior to Plaintiff being given a chance to demonstrate his ability to satisfy the requirements of his job.

86.    Plaintiff has performed all of the conditions required of him to be performed as an employee of EMC, except for those conditions that Plaintiff was prevented from performing by the wrongful acts of Defendants.

87.    Defendants' breached their contracts, both explicit and implied, with Plaintiff by denying him a good faith opportunity to perform his employment duties to the EMC's satisfaction and by failing to comply in good faith with Federal and California State law governing Consumer

13

1    Credit Agencies.

2         88.    Defendants authorized and/or ratified the wrongful actions of their employees and

3    each other.

4         89.    Defendants, their officers and managing agents knew, or should have known, that

5    they, and their agents, officers and employees, acting within the scope of their employment, were

6    taking wrongful actions in breach Plaintiff's employment contracts.

7         90.    As a direct, foreseeable and proximate result of the Defendants' breach of their

8    contracts with Plaintiff, Plaintiff has been injured and has suffered damages including lost wages,

9    employment benefits, and consequential damages to which he is entitled.  The exact amount of

10   plaintiff's damages is unknown, and will be determined at trial.

11                  **THIRD CLAIM FOR RELIEF FOR PROMISSORY ESTOPPEL**
                    **[AGAINST EMC, PRE-EMPLOY AND DOES 6-8]**
12

13        91.    Plaintiff realleges and incorporates by reference the allegations contained in

14   paragraphs 1 through 66 above.

15        92.    Plaintiff asserts this Claim for Relief for Promissory Estoppel in the alternative to the

16   claim of Breach of Contract above.

17        93.    Defendants EMC and Pre-Employ breached their promises to Plaintiff.

18        94.    On November 26, 2014, Defendant EMC promised Plaintiff that starting March 2,

19   2015, he would be employed with Defendant EMC as a Physician Assistant at the Primary Care

20   Palm Springs Rimrock facility, and that he would be paid a yearly salary of $125,195.20.  Ex. 1.

21   Defendant EMC also promised Plaintiff that he would receive a comprehensive benefit package,

22   including $10,000 relocation assistance, and assigned Plaintiff a direct supervisor, EMC's Chief

23   Administrative Officer, Mr. Carl Enzor.

24        95.    Between November 26, 2014 and February 2015, Plaintiff's worked with EMC to

25   gather all of Plaintiff's work history needed for EMC's on-boarding process.

26        96.    In or before March, 2015, as part of Plaintiff's on-boarding process, EMC requested

27   Pre-Employ, a Credit/Investigative Reporting Agency, to prepare a background check on Plaintiff.

28        97.    Defendant Pre-Employ is a Consumer/Investigative Reporting Agency in that, for a

fee, it engages in the practice of gathering, assembling and dissemination consumer information by researching public records, obtaining private information from employers, and interviewing individuals about the subject of the report for the purpose of furnishing consumer and investigative reports to third parties, including EMC, for employment purposes, i.e. for the purpose of evaluating a consumer for employment qualification and retention.

98.     As part of Pre-Employ's performance as a Consumer/Investigative Reporting Agency, it promised, and there was also an implied promise to, Plaintiff that Pre-Employ would treat Plaintiff fairly in gathering and assembling his qualifications for EMC's employment, and it would abide by all of the Federal and State of California laws that governed Consumer/Investigative Reporting Agencies.

99.     Plaintiff filled out and provided the required information and releases, to EMC and Pre-Employ in March, 2015.

100.     By March, 2015, Plaintiff had been an employee of EMC for over three months, had fulfilled all of the hiring requirements that were within his power to fulfill.

101.     On information and belief, between sometime in early March2015 and March 27, 2015, Pre-Employee collected, assembled, and disseminated information to EMC as part of a Consumer/Investigative Report on Plaintiff.

102.     On March 27, 2015, Pre-Employ closed its file on Plaintiff.

103.     On March 27, 2015, Plaintiff was informed that although he was already an employee of EMC he could not start working for EMC on March 28, 2015 because there had been a "problem with the application process."

104.     Plaintiff, to his substantial detriment, relied on EMC's promises of employment and Pre-Employ's promises of fair treatment, in addition to EMC and Pre-Employ's promise of compliance with all Federal and State of California laws that govern Consumer/Investigative Reporting Agencies.

105.     Plaintiff had a legal right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of EMC once he was working; and that Pre-Employ and EMC would abide by all of the Consumer Reporting Agencies laws and treat Plaintiff in good faith.

106.     Both EMC and Pre-Employ failed to perform in good faith their promises and obligations to Plaintiff.

107.     By Defendants' wrongful actions, Plaintiff was denied a good faith opportunity to perform his employment responsibilities to his employer's satisfaction.

**108.**     Defendants EMC and Pre-Employ's breached their promises regarding the employment of Plaintiff, Pre-Employ's preparation of a fair and honest Consumer/Investigative Report, and both Defendant's obligation to abide by the Consumer Reporting laws, caused Plaintiff damages, including lost wages, unreimbursed expenses, loss of job security and emotional distress.

### FOURTH CLAIM FOR RELIEF FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### [AGAINST EMC, PRE-EMPLOY AND DOES 6-8]

109.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 90 above.

110.     Defendants breached the covenant of good faith and fair dealing that is implied by law in all contracts, and was part of Defendants' contracts with Plaintiff.

111.     Defendant EMC and Plaintiff entered into an employment contract on November 26, 2014.   Defendant Pre-Employ and Plaintiff entered into a contract on March 20, 2015.

112.     The covenant of good faith and fair dealing implies a promise that each party will refrain from doing anything to injure the right of the other to receive the benefit of the agreement.

113.     Where the contract confers on one party a discretionary power affecting the rights of the other party, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.

114.     On or about March 27, 2015, prior to Plaintiff actually beginning work for EMC, Defendants breached their contracts with Plaintiff by not abiding by Federal and State of California Consumer Reporting requirements.

115.     Defendant EMC also breached its employment contract with Plaintiff by terminating Plaintiff's employment before he had a chance to demonstrate his ability to satisfy the requirements of his job.

116.    Separate from the breach of contract caused by Defendant EMC's terminating Plaintiff's employment prior to his beginning to work for EMC, Defendants also breached their contracts with Plaintiff by (1) failing to abide by the requirements of the Fair Credit Reporting Act (15 U.S.C. §601, et seq.), the California Consumer Credit Reporting Agencies Act (Cal. Civ. Code, §1785.1 et seq.), and the California Investigative Consumer Reporting Agencies Act (Cal Civ. Code, §1786); (2) failing to provide Plaintiff with the true reason as to why his employment contract was being terminated so that Plaintiff could verify that Defendant EMC was basing the termination on true and correct facts; and (3) preventing Plaintiff from performing his employment duties for which he was hired.  All of these actions were also a breach of the covenant of good faith and fair dealing.

117.    Defendants, their officers and managing agents knew, or should have known, that they, and their agents, officers and employees, acting within the scope of their employment, were taking wrongful actions to breach the covenant of good faith and fair dealing that Defendants owed to Plaintiff.

118.    Defendants authorized and/or ratified the wrongful actions of their employees and each other.

119.    As a direct, foreseeable and proximate result of the Defendants' breach of the covenant of good faith and fair dealing that they owed to Plaintiff, Plaintiff has been injured and has suffered damages, including lost wages, employment benefits to which he was entitled and consequential damages.  The exact amount of Plaintiff's damages is unknown and will be determined at trial.

**FIFTH CLAIM FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**[AGAINST DEFENDANTS PRE-EMPLOY AND DOES 7-8]**

120.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 90 above.

121.    Defendant Pre-Employ intentionally interfered with Plaintiff's employment contract with EMC by providing EMC with a Consumer/Investigative Report that did not have accurate information, and by not following reasonable procedures that would assure maximum possible accuracy.  Further, Pre-Employ did not provide Plaintiff with the required notification and

1    information.

2        122.    EMC had entered into a valid employment contract with Plaintiff on November 26.

3    2014.

4        123.    Pre-Employ was aware of that employment contract because it was asked by EMC to

5    prepare a Consumer/Investigative Report on Plaintiff after the contract had been entered into.

6    Further, EMC had a pattern and practice of only obtaining Consumer Reports on individuals to

7    whom it had already provided an employment contract.

8        124.    Pre-Employ was not a party to the contract between EMC and Plaintiff.

9        125.    By intentionally, or with reckless disregard, violating the Federal and State of

10   California laws that govern Consumer/Investigative Reports, Pre-Employ did not follow reasonable

11   procedures that would assure maximum possible accuracy in the Consumer/Investigative Report that

12   it compiled and prepared on Plaintiff, and thus, Pre-Employ's Consumer/Investigative Report on

13   Plaintiff contained inaccurate, defamatory, and harmful information allegedly about Plaintiff.

14       126.    EMC terminated Plaintiff's employment with EMC as soon as EMC received Pre-

15   Employ's inaccurate Consumer/Investigative Report.

16       127.    Pre-Employ's inaccurate Consumer/Investigative Report caused EMC to terminate

17   Plaintiff's employment prior to Plaintiff being given an opportunity to perform the duties of his

18   employment contract.

19       128.    Defendant Pre-Employ, its officers and managing agents knew, or should have known,

20   that it and its agents, officers and employees, acting within the scope of their employment, were

21   taking intentional wrongful actions toward Plaintiff.

22       129.    Defendant committed the acts alleged herein maliciously, fraudulently and

23   oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive

24   amounting to malice and/or in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover

25   punitive damages in amounts to be proven at trial.

26       130.    As a direct, foreseeable and proximate result of Pre-Employ's wrongful actions,

27   Plaintiff has been injured and has suffered damages including lost wages and employment benefits,

28   extreme emotional distress, other consequential damages, and punitive damages to which he is

entitled.  The exact amount of plaintiff's damages is unknown, and will be determined at trial.

## SIXTH CLAIM OF RELIEF FOR INTENTIONAL INFLICTION OF EMOTONAL DISTRESS
### [AGAINST EMC, PRE-EMPLOY AND DOES 6 THROUGH 8]

131.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

132.    All Defendants intentionally inflicted emotional distress on Plaintiff by intentionally violating the laws related to Consumer Reporting Acts, both Federal and State.  EMC intentionally inflicted emotional distress on Plaintiff by lying about its intention to hire plaintiff as an employee of EMC, intentionally denying that EMC had hired Plaintiff as an employee, and lying about the reasons why EMC was denying that it had hired Plaintiff as an employee.

133.    Defendant EMC undertook extreme and outrageous conduct by informing Plaintiff that he had been hired as an employee of EMC, encouraging Plaintiff to travel from Pennsylvania to California for interviews and housing searches, having Plaintiff apply for EMC's Hospital Prerogative Privileges with Defendants, having Plaintiff undergo a background check, telling Plaintiff that they were very excited about having him as an employee of EMC, then two days before Plaintiff was to begin working as an employee of EMC, informing Plaintiff that there had been a problem with the hiring process, and he was not an employee of EMC.  Defendant Pre-Employ took extreme and outrageous conduct by intentionally failing to fulfill the requirements of both Federal and State Consumer Reporting Acts.

134.    Defendants intentionally failed to abide by, and violated, the laws related to Consumer/Investigative Reporting Acts, both Federal and State.

135.    Defendants undertook the actions identified in Paragraphs 132 through 133 above, intentionally and/or with reckless disregard of the probability of causing emotional distress.

136.    Defendants' wrongful acts were in violation of public policy and California and Federal law.

137.    Defendants 'wrongful acts were not a normal part of the employment relationship.

138.    Plaintiff suffered severe emotional distress because of Defendants' wrongful actions from March, 2015 to the present.  Such damages include, but are not limited to extreme mental

distress, humiliation, anguish, and emotional injuries, all in an amount to be proven at trial.  As a direct, foreseeable and proximate result of Defendants extreme and outrageous act, Plaintiff has been injured and has suffered damages of severe emotional distress.

139.    Defendants, their officers and managing agents knew, or should have known, that they and their agents, officers and employees, acting within the scope of their employment, were taking intentional wrongful actions toward Plaintiff.

140.    Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and/or in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages in amounts to be proven at trial.

**SEVENTH CLAIM FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**
**[AGAINST DEFENDANTS PRE-EMPLOY AND DOES 7-8]**

141.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66, and 91 through 108 above.

142.    Plaintiff asserts this Claim for Intentional Interference with Prospective Economic Relations in the alternative to the claim for Intentional Interference with Contract above.

143.    Defendant Pre-Employ intentionally interfered with Plaintiff's prospective employment with EMC by providing EMC with a Consumer/Investigative Report that did not have accurate information, and by not following reasonable procedures that would assure maximum possible accuracy.

144.    Plaintiff had an economic business relationship with EMC that had the probability of yielding future economic benefits, including that EMC had entered into discussions with Plaintiff toward starting an employment arrangement with Plaintiff on or about November 26, 2014.

145.    Pre-Employ was aware of the employment discussions because it was asked by EMC to prepare a Consumer/Investigative Report on Plaintiff based on those discussions.  Further, EMC had a pattern and practice of only obtaining Consumer Reports on individuals to whom it had already provided an employment offer, an employment contract or with whom it had engaged in prospective employment discussions.

146.    Pre-Employ was not a party to the contract between EMC and Plaintiff.

147.    By intentionally, or with reckless disregard, violating the Federal and State of California laws that govern Consumer/Investigative Reports, Pre-Employ did not follow reasonable procedures that would assure maximum possible accuracy in the Consumer/Investigative Report that it compiled and prepared on Plaintiff, and thus, Pre-Employ's Consumer/Investigative Report on Plaintiff contained inaccurate, defamatory, and harmful information allegedly about Plaintiff.

148.    Pre-Employ disrupted Plaintiff's prospective economic relations with EMC and caused Plaintiff harm, including that EMC terminated the offer of Plaintiff's employment with EMC as soon as EMC received Pre-Employ's inaccurate Consumer/Investigative Report.

149.    Pre-Employ's inaccurate Consumer/Investigative Report caused EMC to terminate Plaintiff's employment opportunity prior to Plaintiff being given an opportunity to perform the duties of his employment contract and thereby caused Plaintiff harm.

150.    Defendant Pre-Employ, its officers and managing agents knew, or should have known, that it and its agents, officers and employees, acting within the scope of their employment, were taking intentional wrongful actions toward Plaintiff.

151.    Defendant committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and/or in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages in amounts to be proven at trial.

152.    As a direct, foreseeable and proximate result of Pre-Employ's wrongful actions, Plaintiff has been injured and has suffered damages including lost wages and employment benefits, extreme emotional distress, other consequential damages, and punitive damages to which he is entitled.  The exact amount of plaintiff's damages is unknown, and will be determined at trial.

**EIGHTH CLAIM FOR RELIEF FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**
**[AGAINST DEFENDANTS PRE-EMPLOY AND DOES 7-8]**

153.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 and 91 through 108, above.

154.    Plaintiff asserts this Claim for Negligent Interference with Prospective Economic

Relations in the alternative to the claim For Intentional Interference with Contract above.

155. Defendant Pre-Employ negligently interfered with Plaintiff's prospective employment with EMC by providing EMC with a Consumer/Investigative Report that did not have accurate information, and by not following reasonable procedures that would assure maximum possible accuracy.

156. Plaintiff had an economic business relationship with EMC that had the probability of yielding future economic benefits, including that EMC had entered into discussions with Plaintiff toward starting an employment arrangement with Plaintiff on or about November 26, 2014.

157. Pre-Employ was aware of the employment discussions because it was asked by EMC to prepare a Consumer/Investigative Report on Plaintiff based on those discussions.  Further, EMC had a pattern and practice of only obtaining Consumer Reports on individuals to whom it had already provided an employment offer, an employment contract or with whom it had engaged in prospective employment discussions.

158. Pre-Employ was not a party to the contract between EMC and Plaintiff.

159. By negligently violating the Federal and State of California laws that govern Consumer/Investigative Reports, Pre-Employ did not follow reasonable procedures that would assure maximum possible accuracy in the Consumer/Investigative Report that it compiled and prepared on Plaintiff, and thus, Pre-Employ's Consumer/Investigative Report on Plaintiff contained inaccurate, defamatory, and harmful information allegedly about Plaintiff.

160. Pre-Employ disrupted Plaintiff's prospective economic relations with EMC and caused Plaintiff harm, including that EMC terminated the offer of Plaintiff's employment with EMC as soon as EMC received Pre-Employ's inaccurate Consumer/Investigative Report.

161. Pre-Employ's inaccurate Consumer/Investigative Report caused EMC to terminate Plaintiff's employment opportunity prior to Plaintiff being given an opportunity to perform the duties of his employment contract and thereby caused Plaintiff harm.

162. Defendant Pre-Employ, its officers and managing agents knew, or should have known, that it and its agents, officers and employees, acting within the scope of their employment, were taking negligent wrongful actions toward Plaintiff.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

163.    As a direct, foreseeable and proximate result of Pre-Employ's wrongful actions, Plaintiff has been injured and has suffered damages including lost wages and employment benefits, extreme emotional distress, and other consequential damages to which he is entitled.  The exact amount of plaintiff's damages is unknown, and will be determined at trial.

### NINTH CLAIM OF RELIEF FOR RELIEF FOR VIOLATION OF CALIFORNIA LABOR CODE, SECTION 1198.5
### [AGAINST DEFENDANT EMC AND DOES 1 TO 3]

164.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

165.    Defendant EMC violated Plaintiff's rights under California Labor Code, section 1198.5 by refusing to provide Plaintiff with a copy of all of his personnel files and records that Defendant maintained relating to Plaintiff's employment with EMC.

166.    Plaintiff was an employee of Defendant EMC beginning on November 26, 2014.

167.    Plaintiff sent Defendant EMC a written request for a copy of his personnel records and all associated files for the first time on April 17, 2015.  When EMC did not respond to Plaintiff's first request for his personnel records, Plaintiff and his counsel sent three more requests.  Defendant EMC never sent Plaintiff any personnel files or records in response to any of Plaintiff's requests.

168.    Defendant EMC refused to provide Plaintiff with a copy of his personnel files and records within thirty calendar days of any of the request, or at any time thereafter.

169.    At the time of Plaintiff's request for a copy of his personnel files and records, Plaintiff had not filed any legal actions against Defendant EMC.

170.    Plaintiff was injured by Defendant EMC's wrongful actions in that Plaintiff was prevented from determining the real reason that Defendant EMC terminated Plaintiff's employment before he began working for Defendant EMC so that Plaintiff could remedy any misunderstanding about his prior work history and continue working for Defendant EMC.

171.    As a proximate result of said wrongful conduct, Plaintiff suffered actual damages in an amount to be proven at trial.

172.    Plaintiff is also entitled to the statutorily authorized amount of $750.00 as a penalty for Defendant's violation of California Labor Code, section 1198.5.

173.     Under the auspices of California Labor Code, section 1198.5, Plaintiff is also entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Court enters judgment against Defendants, and each of them, for:

1.  General, compensatory, and special damages, according to proof,

2.  Punitive damages,

3.  Preliminary and permanent injunctive relief to obtain Defendants' compliance with the FCRA for disclosure of all materials regarding Plaintiff required thereunder,

4.  Reasonable attorneys' fees and costs,

Such other and further relief as the Court deems just and proper.


Dated: June 1, 2016                          ROSSI & MacDONALD
                                             A PROFESSIONAL CORPORATION

                                                    /S/
                                         By: _____
                                                Duncan MacDonald
                                                Attorneys for Plaintiff

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF